IN RE ESTATE OF WILLIAM BREWSTER, DECEASED.
SARAH SEILER v. CORA P. HENLE AND OTHERS.[1]

October 7, 1921.

No. 22,352.

**Will — undue influence — capacity of testator.**

    1. In a will contest the evidence is examined and *held* to sustain the findings of the trial court to the effect that the will in dispute was not induced or brought about by undue influence exerted by those to whom the bulk of testator's property was given, and that the testator was

[1]Reported in 184 N. W. 564.

of sound and disposing mind when the will was formally drawn and executed by him.

**Exclusion of evidence.**

2. There was no prejudicial error in the exclusion of certain evidence tendered by contestants on the trial.

Cora Starring Henle petitioned the probate court for Hennepin county for the allowance of the last will and testament of her uncle, William Brewster, deceased. Mathilda Harrison, Nettie Harrison, Ada Starring and Sarah Seiler, heirs at law and nieces of testator, filed objections to the allowance of the will. From the order of the probate court admitting the will to probate, Dahl, J., the contestants appealed to the district court for that county. The appeal was heard before Waite, J., who affirmed the order of the probate court. From an order denying her motion for a new trial, Sarah Seiler appealed. Affirmed.

*George R. Smith* and *H. Stanley Hanson,* for appellant.

*Cary & Kaminer, Elmer W. Gray* and *John O. Loeffler,* for respondents.

BROWN, C. J.

William Brewster, late of Hennepin county, died therein on the twenty-third day of July, 1919, leaving what purported to be his last will and testament, by which he disposed of his entire property and effects. He left surviving as heirs and next of kin five nieces and two nephews, daughters and sons of his deceased sister, and they in different shares were made sole legatees under the will. The will was duly presented to the probate court for allowance. On the day appointed for hearing thereon certain of the nieces, who had not shared as well as others under the will, interposed objections to the allowance thereof on the grounds, as alleged and stated by them: (1) That the will had been revoked by the testator prior to his death; (2) that the will was procured by the undue influence of one of the nieces and was not testator's free act and deed, and (3) that at the time the will was made testator was suffering from bodily infirmities and was mentally incompetent to know and understand the nature of his act, therefore, that

the will was not in law valid or of legal effect. The issues thus raised were brought to trial before the probate court, and after consideration of the evidence resolved against contestants and the will sustained. An appeal was taken to the district court where, after a trial before the court without a jury, a like result followed. Contestants then appealed from an order of that court denying a new trial.

The points made under the assignments of error do not require extended discussion. There was no showing of mental incapacity on the part of the testator, and the evidence presented to the trial court justified and in our view thereof fully sustains the finding that the will was not the result of or brought about by the undue influence of any of the legatees who received the bulk of the property. We need not review the evidence; it would serve no useful purpose. It is sufficient that we have read it with the result stated. The principal question raised on the appeal is whether there was reversible error in the rulings of the trial court in the admission and exclusion of evidence. We answer it in the negative.

Testator was some 59 years of age at the time the will was executed, and he continued in life until he was 65. He owned both real and personal property of the value of $40,000, or more. The evidence shows that for some 20 years prior to his death a woman by the name of Johnson served him in the capacity of housekeeper during all that time. He had no wife or children. His sister, the mother of the nieces and nephews named as legatees, died a number of years prior to the date of the will in question, and after her passing there seems to have grown up among her children much ill will and hatred, one toward the other, a condition that remained up to the time of the trial of this case. One of the favored legatees, Cora Henle, apparently was intense in her feelings towards her sisters, and the claim is that by methods of various kinds she sought to poison and prejudice the mind of testator against them, and that she in fact succeeded. It was sought to show by certain correspondence between the sisters, or some of them, and by letters written by Cora, this intense and violent family disturbance, and disruption of the natural love and affection usually found in the family circle. The evidence was excluded, and we think properly so. The letters were written, and the

correspondence offered for the purpose took place, subsequent to the date of the will, and simply emphasized the existence of the strained family relations, a fact that was fully before the court. There was no error in this respect.

There was an attempt also to introduce in evidence a conversation had between the niece Cora and testator's housekeeper, which took place it is claimed in the presence and hearing of testator, and which tended to indicate a purpose on the part of Cora to place one of her sisters in an unfavorable light before testator. It was excluded. The court might have admitted the evidence without error, but the subject matter and character of the conversation is not of such significance or importance as a factor in the direction claimed as to justify a new trial of the action. It seems that one of the nieces had sent to testator a jar of cherry preserves, and, upon discovery thereof in the house, and hearing from whence it came, Cora admonished the housekeeper not to let testator eat thereof, for she believed the same had been poisoned by her sister. Whether testator heard the conversation is left in doubt by the evidence. He was in the room, but was reading a newspaper, took no part therein, and apparently paid no attention to what was under discussion by the housekeeper and Cora. The fact sought to be brought out, corroborated what already appeared, and disclosed the extreme hatred Cora had for the particular sister. There being a serious doubt whether testator heard or was influenced thereby in making his will, the ruling should not require a new trial.

Testator seems to have been a man of too strong a personal character to be influenced by the incident, conceding that he may have heard the conversation. He was in sound mental and physical condition when the will was made, and verbally directed the terms and provisions to be inserted therein. The will was drawn by a reputable attorney at his office in Minneapolis, and no other person accompanied testator; in fact it does not appear that any of the nieces or nephews knew when the will was so formally made and executed, or that they at any time made any suggestions to testator as to what he should do with his property, and the unfriendly relations between the nieces appear as about the only

basis for the charge that he was influenced by those favorably treated by the will in discriminating against the others.

There may be another item or two of rejected evidence not necessary to specially mention, which could have been admitted without error. But our examination thereof in connection with the whole record leads to the conclusion that the matters tendered were not of special importance or significance, and that the exclusion thereof was not prejudicial. The result would not have been different had the evidence been admitted. 2 Dunnell, Minn. Dig. §§ 7181, 7182.

What has been said covers the case. The evidence sustains the findings of the trial court, the record presents no reversible error, and the order appealed from must be affirmed.

It is so ordered.